UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RITA ARGUIJO GARCIA,

        Plaintiff,

v.                                  Case No. 8:22-cv-2175-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 306-12, 313-20). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 57-71, 72-86, 91-111, 112-32). Plaintiff then requested an administrative hearing (Tr. 196-97). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-56). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled

and accordingly denied Plaintiff's claims for benefits (Tr. 13-26). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-8). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1967, claimed disability beginning on December 31, 2019 (Tr. 57, 72, 87-88). Plaintiff has at least an eleventh-grade education (Tr. 349). Plaintiff has past work experience making deliveries and being a "trash picker" in the construction industry and also working as a sandwich maker in the fast-food industry (Tr. 349). Plaintiff alleged disability due to sciatica, sleep apnea, asthma, high blood pressure, cholesterol, muscular pain, memory problems, depression, migraines, stomach problems, vertigo, and arm problems (Tr. 348).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024 and had not engaged in substantial gainful activity since December 31, 2019, the alleged onset date (Tr. 21). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, degenerative disc disease of the cervical spine, cervical radiculopathy, osteoarthritis of the left acromioclavicular joint, left rotator cuff tear, status post decompression and repair, adhesive capsulitis of the left shoulder, history of right rotator cuff tear, status post repair, asthma, migraine, and obesity (Tr. 22). Notwithstanding the noted impairments, the ALJ

2

determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk 6 total hours in an 8-hour workday; sit 6 total hours; never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally reach overhead bilaterally; must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, hazards, and fumes, odors, dusts, gases, and other pulmonary irritants; and can have no exposure to loud or very loud noise (Tr. 24). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 25).

Given Plaintiff's background, RFC, and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff can perform her past relevant work as a fast-food worker as generally performed (Tr. 27-28). Additionally, based on the VE's testimony, the ALJ found that there are other jobs which exist in significant numbers in the national economy that Plaintiff can perform, such as mail sorter, router, and cashier II (Tr. 28). Accordingly, based on Plaintiff's age, education,

work experience, RFC, and the VE's testimony, the ALJ found Plaintiff not disabled (Tr. 29).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether

4

the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the ALJ that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the ALJ's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The ALJ's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the ALJ are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by finding that Plaintiff could perform her past relevant work as a fast-food worker because her past work more accurately corresponds with the job of "fast-food cook." Additionally, Plaintiff argues that the Appeals Council erred by failing to find that she was entitled to a protective filing date as of the date she submitted her request for review and challenges the constitutionality of Social Security Ruling 11-1p and 20 C.F.R. § 416.1470(c). For the following reasons, the ALJ applied the correct legal standards, and the Appeals Council's decision was consistent with the relevant SSA regulation, which has a rational basis.

### A.    Past Relevant Work as a Fast-Food Worker

Plaintiff argues that the DOT occupation, fast-food worker, which was cited by the VE and the ALJ does not encompass the work she performed and contends that her past work more properly comports with work as a fast-food cook. According to Plaintiff, if her past work was classified as a fast-food cook rather than as a fast-food worker, Plaintiff could not perform such work as it is generally performed or as she actually performed the work.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. Past relevant work consists of work a claimant performed "within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R.

§§ 404.1565(a), 416.965(a). The claimant bears the burden of proving that his or her impairments prevent the performance of past relevant work. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *cf. Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work") (citation omitted). Additionally, the claimant bears the burden of demonstrating that his or her past work experience does not constitute past relevant work. *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Barnes v. Sullivan*, 932 F.3d 1356, 1359 (11th Cir. 1991)).[1] In considering past relevant work, a finding of "not disabled" is warranted where a claimant retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Social Security Ruling 82-62 ("SSR 82-62"), 1982 WL 31387, at *2 (Jan. 1, 1982). Stated differently, "[a] claimant is not disabled if she is able to perform her past work either as she actually performed it or as it is generally performed in the national economy." *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 832 (11th Cir. 2006) (citation omitted). "The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (emphasis in original;

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

citations omitted). Accordingly, a claimant needs to demonstrate that he or she cannot return to his or her former *type* of work rather than to a specific prior job. *Id.* (citations omitted). The regulations anticipate the ALJ's reliance on the VE for his or her knowledge and expertise and explicitly state a "vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

There are several issues with Plaintiff's argument. First, Plaintiff did not challenge the VE's alleged misclassification of her part work as a fast-food worker. A number of courts have found that a claimant's failure to raise an argument before the ALJ relative to her past relevant work forecloses such a contention on appeal. *See e.g., Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 16555990, at *3 (M.D. Fla. Sept. 23, 2022) (finding that the ALJ was not obligated to further investigate whether the plaintiff's job as a real estate agent was past relevant work because the plaintiff did not object or otherwise raise the issue to the ALJ at the hearing); *New v. Comm'r of Soc. Sec.*, No. 5:12-CV-211-OC-18PRL, 2013 WL 3804846, at *3 (M.D. Fla. July 8, 2013) ("As an initial matter, the Commissioner correctly notes that the Plaintiff did not raise this issue to the ALJ, nor did her attorney object to the VE's testimony identifying Plaintiff's prior work as a housekeeper as past relevant work. Unfortunately for Plaintiff, because she failed to raise this issue to the ALJ or even object to the VE's testimony, the ALJ was not

obligated to specifically address the concerns—or rather, arguments—that Plaintiff now raises."); *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-CV-1242-J-MCR, 2011 WL 722966, at *5 (M.D. Fla. Feb. 23, 2011) (finding that where the plaintiff did not raise the issue to the ALJ as to whether her prior job as a real estate agent qualified as substantial gainful activity and did not object to the VE's "past relevant work summary," which included the job of real estate agent, that the ALJ was not required to specifically discuss his reasons for concluding that the plaintiff's past work as a real estate agent qualified as substantial gainful activity). Here, Plaintiff, who was represented by counsel at the hearing, failed to ask any questions of the VE when given the opportunity and did not raise any concerns to the ALJ regarding the classification of her past work (*see* Tr. 51-56).

The second issue with Plaintiff's argument is that the record reflects that there was sufficient information about the demands of Plaintiff's past work for the ALJ to determine that Plaintiff could perform her past work as a fast-food worker.

The DOT describes the position of a fast-food worker as follows:

Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

DOT § 311.472-010, 1991 WL 672682. The fast-food worker position is rated as light work, occasionally exerting up to twenty pounds and frequently exerting up to ten pounds to move objects. *Id.* "Even though the weight lifted may be only a negligible amount, a job should be rated Light Work . . . when it requires walking or standing to a significant degree." *Id.* The DOT describes the position of fast-food cook as follows:

> Prepares and cooks to order foods requiring short preparation time: Reads food order slip or receives verbal instructions as to food required by patron, and prepares and cooks food according to instructions. Prepares sandwiches [SANDWICH MAKER (hotel & rest.) 317.664-010]. Prepares salads and slices meats and cheese, using slicing machine, [PANTRY GOODS MAKER (hotel & rest.) 317.684-014]. Cleans work area and food preparation equipment. May prepare beverages [COFFEE MAKER (hotel & rest.) 317.684-010]. May serve meals to patrons over counter.

DOT § 313.374-010, 1991 WL 672716. The fast-food cook position is rated as medium work, occasionally exerting twenty to fifty pounds, and frequently exerting ten to twenty-five pounds to move objects. *Id.*

Based upon Plaintiff's work history report and the DOT, the ALJ properly determined that Plaintiff's past relevant work was that of a fast-food worker. The ALJ considered Plaintiff's work history report, Plaintiff's testimony regarding her past work, and the VE's assessment of the past work. In her work history report, Plaintiff noted that she worked in food prep at McDonalds (Tr. 391). When asked to describe her job, she wrote "I was making the food prep. I would stock when running low of supply" (Tr. 391). Plaintiff also noted that she did not use machines, tools, or equipment, or use any technical knowledge or skills (Tr. 391). Moreover,

Plaintiff reported standing six hours in a workday and having to handle, grab, or grasp large objects for six hours in a workday (Tr. 391). Plaintiff also noted that she lifted and carried boxes from the freezer every couple of days and the heaviest weight she lifted was twenty pounds and the weight she frequently lifted was ten pounds (Tr. 391). At the hearing, when the ALJ asked her if she was mostly doing food prep, Plaintiff agreed (Tr. 42). Plaintiff testified that that she would go in the stock room and get new supplies if food was running low, including going into the freezer to bring out boxes of potatoes (Tr. 42). The VE testified that Plaintiff's past work classified as fast-food worker which was light work as described and as performed (Tr. 51). Given Plaintiff's lifting, walking, and standing patterns, in addition to her responsibilities, the job of fast-food worker adequately reflects the nature of Plaintiff's occupation. *See McCook v. Aetna Life Ins. Co.*, No. 3:17-CV-823, 2018 WL 6983618 at *19 (M.D. Fla. Nov. 14, 2018) (citation and quotation marks omitted) ("A DOT occupation is appropriately analogous if it involves duties that are comparable to those of the claimant's occupation, but not necessarily every duty.")

Plaintiff makes no showing, however, that the ALJ did not develop the record as to the physical requirements, demands, and duties of the Plaintiff's former job as she actually performed it. *See Waldrop*, 379 F. App'x at 953. Plaintiff also fails to demonstrate that the ALJ's characterization of Plaintiff's past work based upon her administrative filings, her hearing testimony, and the VE's assessment is unsupported by substantial evidence. Rather, she asserts that there is a different

classification that better describes her role. As a result, the Court is unpersuaded by Plaintiff's contention that the ALJ (or the VE) misclassified the Plaintiff's past work in the fast-food industry. It is, after all, not the function of this Court to reweigh the evidence upon review. *See Winschel*, 631 F.3d at 1178.

Plaintiff also argues that if the ALJ had classified her past work as a fast-food cook and found that she was unable to perform that work, and because she was only a few months short of her 55th birthday, there is a reasonable possibility that the ALJ would have declined to mechanically apply the Grids and treat Plaintiff as if she was already 55 years old and approve her claim. Plaintiff's argument is filled with assumption this Court cannot make.

As previously stated, at step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f), 416.920(a)(4)(iv) & (f). At this step, the claimant bears the burden of proving that his or her impairments prevent him or her from performing past relevant work. *Doughty*, 245 F.3d at 1278. If the claimant cannot perform her past relevant work, the ALJ moves on to step five of the evaluation, which requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, not only did the ALJ conclude that Plaintiff was able to perform her past relevant work as a fast-food worker, but the ALJ made an alternate fining at step five that Plaintiff could perform work as a mail sorter, router, and cashier (Tr. 28). Plaintiff does not challenge the ALJ's alternate finding. *See Frizzio v. Astrueas*, No. 6:11-cv-1318-Orl-31TEM, 2012 WL 3668049 (M.D. Fla. Aug. 7, 2012) ("When an ALJ has committed error at step four, it may be harmless error if her alternative finding at step five is correct.").

Moreover, Plaintiff argues that if the ALJ would have found that she could not perform her past relevant work and treated her as if she was already 55, the Grids would direct a finding of disabled. However, the ALJ could not have relied exclusively on the Grids at step five to find her disabled. At step five, the ALJ must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995).; 20 C.F.R. § 404.1520(a)(4)(v). "The ALJ must articulate specific

jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy: namely, by applying the Grids and by using a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must consult a VE. *Id.* at 1242; *see also Walker v. Bowen,* 826 F.2d 996, 1002-03 (11th Cir. 1987) (quotation omitted) ("Exclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."). However, when both exertional and non-exertional impairments exist, the Grids may still be applicable. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). Where the ALJ considers the non-exertional limitations, the ALJ need only determine whether the non-exertional limitations significantly limit the claimant's basic work skills, meaning that the claimant has limitations that prohibit him or her from performing "a wide range" of work at a given level. *Phillips*, 357 F.3d at 1243 (emphasis in original); *see also Sryock*, 764 F.2d at 836 (citations and quotation marks omitted) ("[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level."). If the ALJ determines that a claimant's non-exertional limitations do not significantly

limit his or her basic work skills at a specific work level, the ALJ may rely on the Grids in determining whether the claimant is disabled. *Phillips*, 357 F.3d at 1243;

In the instant case, the ALJ noted that if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Grid rule 202.10 (Tr. 28). However, the ALJ specifically found that Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations (Tr. 28). "To determine the extent to which these limitations erode the unskilled light occupational base," the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC (Tr. 28). The VE testified that Plaintiff was able to perform the work of a mail sorter, router, and cashier (Tr. 28). The ALJ concluded that considering the Plaintiff's age, education, work experience, and RFC, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 29).

The ALJ correctly applied the law. At step five of the sequential evaluation process, the ALJ determined that, although the Grids would ordinarily support a finding of "not disabled" in Plaintiff's case, the ALJ needed to utilize the VE's testimony to establish whether a significant number of jobs existed for Plaintiff in the national economy because Plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by her limitations. Plaintiff does not challenge the ALJ's factual findings with regard to her RFC or the conclusion that she could not perform a full range of light work, or argue that she is unable to

perform her past relevant work as a fast-food worker. Given the VE's testimony that there existed three types of jobs in significant numbers in the national economy that a person with Plaintiff's RFC could perform, substantial evidence supports the ALJ's conclusion that, because the Commissioner met its burden at step five, Plaintiff did not demonstrate that she was disabled.

### B.   SSR 11-1P

Plaintiff argues that Social Security Ruling 11-1p violates the equal protection clause to the United States Constitution, and that the Appeals Council should have included in their decision an order that if Plaintiff made a new application for SSI within 60 days, the date of the Request for Review would be deemed a protective filing date for a new application.

The Equal Protection Clause directs that no state will "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14 § 1. Plaintiff concedes that because she does not claim to be a member of a suspect class or allege a burden on one of her fundamental rights, the constitutional inquiry falls within rational-basis review. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). Under rational-basis review, a statute or regulation that classifies persons in such a way that they receive different treatment under the law is permitted so long as there is a "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993); *see also City of Cleburne, Tex., v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985), *superseded by statute on other grounds*, ("The general rule is

that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."). In an equal-protection challenge, "the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Leib*, 558 F.3d at 1306. If "any reasonably conceivable state of facts . . . could provide a rational basis for the classification," the classification must be upheld. *Heller*, 509 U.S. at 320 (citation and quotation marks omitted).

In *Williams v. Comm'r of Soc. Sec.*, the Eleventh Circuit Court of Appeals described the regulatory scheme behind SSR 11-1p, which this Court adopts below:

> For the period from 1999 through 2011, the SSA's procedures permitted a claimant to have two applications for the same type of disability benefits pending at the same time. *See* Procedures for Handling Requests to File Subsequent Applications for Disability Benefits, SSR 11-1p, 76 Fed. Reg. 45,309, 45,310 (July 28, 2011) ("SSR 11-1p" or the "ruling"). Under these procedures, if an ALJ denied a claimant's application for disability benefits and she sought review of that decision from the Appeals Council, she also could file a new application with the SSA under the same title seeking the same type of benefits. *Id.* The agency would process the claimant's second disability claim while she continued to pursue administrative review of her initial claim. *Id.*
>
> Over time, the SSA saw an increase in the number of claimants who both sought Appeals Council review and filed subsequent disability claims. *Id.* When a claimant had two applications seeking benefits under the same title and type pending at the same time, there was a risk of conflicting agency decisions, which the SSA then had to reconcile. *Id.* The SSA found that allowing claimants to have two applications pending at the same time resulted in "improper payments, increased administrative costs, and unnecessary workloads stemming from duplication." *Id.*
>
> To address these problems, the agency issued SSR 11-1p, a Social Security Ruling, which revised the procedures for handling subsequent applications for disability claims of the same title and type. *Id.* Under SSR 11-1p, a claimant generally may not have two

applications for the same type of benefits pending at the same time. *Id.* When a claimant has a request for review pending before the Appeals Council, the agency will not accept a subsequent application from the claimant seeking the same type of benefits. *Id.* The revised procedures effectively required a claimant to choose between pursuing administrative review of her initial application and filing a new one. *Id.*

Even though the SSA will not accept a new application from a claimant while she pursues Appeals Council review, she may submit additional evidence to the Appeals Council relevant to her initial application. *Id.* at 45,110–11; *see Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (explaining that a claimant is permitted to present new evidence at each stage of the administrative process, including before the Appeals Council, and that the Appeals Council is obligated to consider such evidence).

The SSA's regulations have long addressed when the Appeals Council may consider additional evidence submitted by a claimant. *See* 20 C.F.R. § 416.1470(c) (the "regulation"). In the 1980s, the SSA proposed a regulation that would have barred the Appeals Council from considering additional evidence from a claimant in any circumstances. Limit on Future Effect of Applications and Related Changes in Appeals Council Procedures, 52 Fed. Reg. 4,001, 4,001–02 (Feb. 9, 1987). But the SSA ultimately did not implement this broad ban on the Appeals Council's consideration of additional evidence. *Id.* at 4,002. Instead, the agency limited the Appeals Council to considering evidence relating to the period on or before the date of the ALJ's decision. *Id.* At the same time, the SSA added a provision to its regulations specifying that if a claimant submitted additional evidence that the Appeals Council found related to the period after the date of the ALJ's decision, the Appeals Council would return the evidence to the claimant. *Id.* It also would advise the claimant that if she filed a subsequent application for benefits, the date of her request for review would be used as the protective filing date for the application. *See id.*; *see* 20 C.F.R. § 416.1470(c).

In 2011, when the SSA issued SSR 11-1p, it essentially repeated the regulation's language related to protective filing dates. *Compare* 20 C.F.R. § 416.1470(c) (providing that if the Appeals Council returns additional evidence and the claimant timely files a new application, the SSA "will use the date [the claimant] requested Appeals Council review as the filing date for [a] new application") *with* SSR 11-1p, 76 Fed. Reg. at 45,311 (providing that if the Appeals Council returns additional evidence and the claimant timely files a new application,

the SSA "will consider the date [the claimant] filed the request for Appeals Council review as the filing date for [a] new claim").

Under the regulation and the ruling, then, when a claimant whose disability claim is denied has additional evidence, she must decide between pursuing administrative review of her initial claim before the Appeals Council and filing a new disability claim. If she elects to pursue administrative review and submits new evidence to the Appeals Council, the Appeals Council first asks whether the additional evidence is chronologically relevant: does it "relate[ ] to the period on or before the date" of the ALJ's decision. 20 C.F.R. § 416.1470(a)(5), (c); SSR 11-1p, 76 Fed. Reg. at 45,310. If the Appeals Council determines that the evidence relates to this period (and thus is chronologically relevant), it will grant review if it finds that the additional evidence also is new and material, there is a reasonable probability that the additional evidence would change the outcome of the decision, and the claimant has shown good cause for not previously informing the agency about or submitting the evidence. *See* 20 C.F.R. § 416.1470(a)(5), (b).

If the Appeals Council determines that the claimant's additional evidence is not chronologically relevant, meaning it does not relate to the period on or before the date of the ALJ's decision, the Appeals Council will return the additional evidence to the claimant and explain why it did not accept the evidence. *Id.* § 416.1470(c); SSR 11-1p, 76 Fed. Reg. at 45,311. The Appeals Council also will inform the claimant that if she files a new claim for the same disability benefits under the same title within 60 days of the notice, the SSA will use the date of the claimant's request for review with the Appeals Council as the protective filing date. 20 C.F.R. § 416.1470(c); SSR 11-1p, 76 Fed. Reg. at 45,311.

No. 21-10920, 2022 WL 791711, at *1-3 (11th Cir. Mar. 16, 2022).

As Plaintiff correctly notes, SSA treats those claimants who submit additional evidence to the Appeals Council that is found not to relate to the period on or before the date of the ALJ's decision differently from claimants who submit no evidence to the Appeals Council. Claimants who submit additional evidence to the Appeals Council and who the Appeals Council determines that the additional evidence does not relate to the period on or before the date of the ALJ's hearing

decision, receive a notice explaining its actions in declining to accept the additional evidence and informing the claimant that if he or she files a new application, the agency will consider the date that the claimant filed the request for the Appeals Council's review of the pending claim to be the filing date for a new claim, i.e., the protective filing date. *See* 20 C.F.R. §§ 404.970(c), 416.1470(c). The essence of Plaintiff's argument is that those claimants who submit additional evidence that is deemed not chronologically relevant receive more favorable treatment because they are entitled to a protective filing date. Whereas claimants, like Plaintiff, who do not submit additional evidence, are not entitled to a protective filing date and may just file a new claim.

However, as the ruling explains, SSR 11-1p provides detailed rationale for limiting pending applications from the same claimant and applying protective filing dates to claimants that are classified as having submitted additional evidence. *See* SSR 11-1p, 2011 WL 3962767, at *1–2. The ruling details that the need for a change in policy and procedures for considering subsequent claims of the same type arose from an increase in subsequent disability claims and the resulting issues of conflicting decisions, improper payments, increased administrative costs, and unnecessary workloads. *Id.* The purpose of the new policy and procedures was to support administrative efficiency and conserve resources. *Id.* As argued by the Commissioner and noted in *Williams*, given that a claimant may submit additional evidence without knowing whether it is chronologically relevant, "it was reasonable for the SSA to allow claimants who submit additional evidence to the Appeals

Council that is later determined not to be chronologically relevant to have the benefit of a protective filing date." 2022 WL 791711, at *8. "In contrast, when a claimant has submitted no additional evidence to the Appeals Council, there is no similar reason for the SSA to afford her the benefit of a protective filing date." *Id.* There is a rational relationship between this disparate treatment and a legitimate government purpose.

Because Plaintiff did not submit additionally evidence, SSR 11-1p did not apply to her request for review, thus she was not entitled to a protective date, and her argument that SSR 11-1p is unconstitutional lacks merit.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 19th day of October, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record